IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MARK ANTHONY TOYER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v ) | Case No.: 1:16-CV-8050-VEH |
| ) | (1:06-CR-361-VEH-JEO-1) |
| UNITED STATES OF ) | |
| AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

This case is before the Court on the motion filed by Mark Anthony Toyer ("Movant") on or about June 2, 2016, pursuant to 28 U.S.C. § 2255 to vacate or set aside the sentence he received on May 18, 2007. (Doc. 1; Crim. Doc. 60). The Movant is in federal custody. (Doc. 1). The motion invokes *Johnson v. United States*, 135 S. Ct. 2551 (2015) as the basis for the relief sought.

### BACKGROUND

Movant was indicted on August 30, 2006, on two counts of violating in violation of Title 18, United States Code, Section 922(g)(1): felon in possession of a firearm (Count One) and felon in possession of ammunition (Count Two). On January 31, 2007, he was convicted by a jury of both counts. On May 18, 2007, he

was sentenced by the undersigned as to each count to be imprisoned by the Bureau of Prisons for 235 months, separately and concurrently.[1] In the PSR, it is stated that the Movant had been convicted of three "violent felonies" and one "serious drug offense." The three violent felonies are listed as one conviction for manslaughter (CC- 94-428) and two separate convictions each for second degree assault (CC 97-730 and CC 98-1036). These four convictions were all counted in the PSR and accepted by the Court as qualifying for the Armed Career Criminal Act ("ACCA") enhancement. The ACCA enhancement requires that anyone who is convicted of violating 18 U.S.C. § 922(g) and who has three previous convictions for a violent felony or a serious drug offense, or both, must be imprisoned for a minimum of 15 years. 18 U.S.C. § 924(e)(1)(providing that a defendant who violates 18 U.S.C. 922(g) and who has at least three prior convictions for a violent felony or serious drug offense is subject to a fifteen-year statutory minimum sentence).

Movant's direct appeal was denied on the merits on April 23, 2008. *United States v. Toyer*, 274 F. App'x 844 (11th Cir. 2008) (per curiam) (unpublished). He did not seek a writ of certiorari from the United States Supreme Court.

---

[1] Although Movant filed objections to the Presentence Report ("PSR"), he did not object to any of the paragraphs setting out or describing his prior convictions.

On or about November 14, 2008, Movant filed a motion to vacate or set aside sentence pursuant to 28 U.S.C. § 2255 (the "First Petition"). This Court denied the First Petition on November 17, 2009. (*See Mark Anthony Toyer v. United States*, 1:08-cv-08046-VEH at Docs. 14, 15). Movant's appeal of that denial was dismissed by the Eleventh Circuit Court of Appeals on April 29, 2010, for lack of prosecution. (*Id.*, Doc. 25).

On or about August 17, 2015, Movant again filed a motion to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255 (the "Second Petition") (*see Mark Anthony Toyer v. United States*, 1:15-CV-8019-VEH). The undersigned dismissed the Second Petition as second or successive "without prejudice to allow [Movant] the opportunity to seek authorization from the Eleventh Circuit to file a second or successive § 2255 motion." *Toyer v. United States*, No. 1:06-CR-361-VEH-JEO, 2016 WL 1046241, at *1 (N.D. Ala. Mar. 16, 2016). The Eleventh Circuit Court of Appeals subsequently granted such authorization. (*In re: Mark Toyer*, No. 16-11431-E; *see also* Doc. 1 at 14). This motion followed.

### ISSUES PRESENTED

Movant has filed the Motion (Doc. 1), a Memorandum of Law (Doc. 2), a

Response to Attorney's Motion To Withdraw (Doc. 4)[2], a Motion To Amend (Doc. 6), and a Request for Judicial Notice (Doc. 15).[3] In the Motion, Movant alleges that his sentence was unconstitutionally excessive. Specifically, he argues that his sentence should not have been enhanced under the ACCA because his manslaughter and second degree assault convictions are not proper predicate offenses to support such an enhancement. In his Motion To Amend, he makes further arguments in support of these assertions. In his Request for Judicial Notice, he challenges the sufficiency of the evidence at sentencing and states that the Government had the burden to "prove [that each predicate conviction was] actually violent and that the drugs offenses [sic] were in fact serious drug offenses." (Doc. 15 at 1).[4,5]

---

[2] Pursuant to the standing order related to *habeas* claims asserting *Johnson*, this Court referred the Motion to the Federal Public Defender for the Northern District of Alabama. (Doc. 3). That Office notified the court that "[u]pon review of [Movant's] case and presentence report, the FPD cannot advance a good-faith argument that [the Movant] is entitled to relief in light of *Johnson*." (Doc. 7).

[3] He has also filed a Motion To Compel the Court for a Report and Recommendation (Doc. 14), a Motion To Appoint Counsel (Doc. 16), and a Request (Doc. 17). To the extent that these documents ask this Court to take any action other than those taken in this Memorandum Opinion and the accompanying Order, the motions/requests are **DENIED**.

[4] The PSR only reported <u>one</u> "serious drug offense."

[5] Because *Johnson* had no impact on the portion of the ACCA relating to convictions for serious drug offenses, any argument relating to the drug conviction is time-barred and further lacks any merit. Additionally, because Movant failed to raise this issue (or any other issue) relating to his sentence on direct appeal, any such non-*Johnson* based arguments are procedurally

The Government argues that the Motion "should be dismissed [as second or successive] because [Movant] was sentenced on the basis of not only the ACCA's residual clause but also its use-of-force clause, which was left unaffected by *Johnson*." (Doc. 10 at 3-4). It further argues that Movant's *Johnson* claim is procedurally defaulted. (Doc. 10 at 6).[6] Finally, it argues that the Motion is wrong "on the merits ... because his manslaughter and assault offenses remain violent felonies under the use-of-force clause." (Doc. 10 at 7).

## ANALYSIS

The Armed Career Criminal Act, 18 U.S.C. § 924 ("ACCA"), defines the term violent felony as follows:

> (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year,...that—
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another....

18 U.S.C.A. § 924(e)(2)(B) (West).

---

barred. Accordingly, the Court does not address them further. Further, the Supreme Court has held that the advisory Sentencing Guidelines are not subject to vagueness challenges under the Due Process Clause. *Beckles v. United States*, 137 S. Ct. 886, 890 (2017).

[6] If Movant now asserts a *Johnson* claim (which is a newly-recognized retroactively applicable rule of Constitutional law), it cannot be procedurally defaulted by his failure to have raised it on direct appeal. The Court will not spend any further time on this argument.

(B)(i) is referred to as the "elements" clause of the ACCA. The first portion of (B)(ii) ("is burglary, arson, or extortion, involves use of explosives") is referred to as the "enumerated" clause of the ACCA, and the last portion of (B)(ii) ("or otherwise involves conduct that presents a serious potential risk of physical injury to another") is referred to as the "residual" clause of the ACCA. *Mays v. United States*, 817 F.3d 728, 731 (11th Cir. 2016).

*Johnson* held that the residual clause of the ACCA is unconstitutionally vague. That Court held, "We are convinced that the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges. Increasing a defendant's sentence under the clause denies due process of law." *Johnson*, 135 S. Ct. at 2557. In that decision, the Supreme Court clearly stated that, in holding that the residual clause is void, it did not call into question the application of the elements clause or the enumerated crimes set out in the ACCA's definition of a "violent felony." *Id*. at 2563. ("Today's decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony."). Thus, the question for this Court to decide is whether, under the record now before me, which includes the PSR, the sentencing transcripts, and merits arguments from both sides, does Movant have at least two convictions that count

6

as violent felonies under the ACCA's definitions that are unaffected by *Johnson* (that is, they are violent felonies under either the elements clause or the enumerated offenses clause). Because the predicate convictions are for Alabama manslaughter and Alabama second-degree assault, it is clear that they do not fall within the enumerated offenses clause. Accordingly, this Court must necessarily analyze each of the challenged convictions to determine whether, at the time Movant was sentenced, any two[7] of his challenged convictions qualified as a violent felony only under the residual clause of the ACCA.[8]

Movant argues that the elements of the Alabama statutes applicable to his prior convictions are broader than the ACCA's provision defining a violent felony, because a conviction under either of the statutes at issue could be for reckless (as opposed to intentional) conduct under different alternative elements of each statute. This Court agrees. Further, the Eleventh Circuit has held "that a conviction

---

[7] *Johnson* had no impact on the ACCA's definition of a "serious drug offense." At sentencing, this Court found that Movant had one conviction for a serious drug offense, and that determination is not properly before this Court at this time. *See* footnote 5, *supra*. Thus, if any two of Movant's remaining prior convictions fall solely within the residual clause of the ACCA, the Motion is due to be granted; otherwise, the Motion is due to be denied.

[8] The Court rejects the Government's argument that, because the PSR "identified both the use-of-force clause and the residual grounds for designating [the convictions at issue Movant's] predicates [sic] violent felonies and [Movant] did not make an objection," he has not asserted a *Johnson* claim. (Doc. 10 at 5). Facts in the PSR that are not objected to at sentencing are considered established. Legal conclusions or labels in the PSR are not.

7

predicated on a *mens rea* of recklessness does not satisfy the 'use of physical force' requirement under [United States Sentencing Guidelines] § 2L1.2's definition of 'crime of violence.'" *United States v. Palomino Garcia*, 606 F.3d 1317, 1336 (11th Cir. 2010). Accordingly, this Court will look to the materials it has[9] to determine whether that record establishes, for each challenged conviction, a still-valid-post-*Johnson* basis for enhancement under the ACCA.[10]

As set out in the PSR, Movant has two Alabama convictions for second-degree assault. The language of the Alabama statute at issue defines second-degree assault in several ways, including when:

> (1) With intent to cause serious physical injury to another person, [an individual] causes serious physical injury to any person; (2) With intent to cause physical injury to another person, he or she causes physical injury to any person by means of a deadly weapon or a dangerous instrument; (3) He or she recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument ....; or (7) For a purpose other than lawful medical or therapeutic treatment, he or she intentionally causes stupor, unconsciousness, or other physical or mental impairment or injury to another person by administering to him or her, without his or

---

[9] Unlike the Court of Appeals when it granted Movant's application, this Court has access to the presentence report and the sentencing hearing transcript. It also has the benefit of merits briefing. The Government has chosen not to supplement that record with any other *Shepard* type documents.

[10] On the merits, the Government has argued only that the "use-of-force" clause also applies (and thus Johnson does not abrogate Movant's ACCA enhancements). The Court agrees that the challenged convictions do not fall within the enumerated crimes clause and has analyzed the challenged convictions under the sole remaining clause – the elements clause.

8

her consent, a drug, substance or preparation capable of producing the
intended harm.

Ala. Code § 13A–6–21.

This Court is persuaded by the reasoning of the Eleventh Circuit's non-binding decision in *United States v. Anderson*, 442 Fed. Appx. 537, 539-40 (11th Cir. 2011) (per curiam) (unpublished) (concluding that Alabama's assault in the second degree statute is broader than the ACCA's definition of a "violent felony" because a conviction could be obtained for reckless or intentional conduct under different alternative elements of that statute, and reckless conduct does not necessarily require use of physical force). *See also Spencer v. United States*, 2017 WL 1953433, at *2 (N.D. Ala. May 11, 2017) (same); *Jefferson v. United States*, 2016 WL 6023331, at *1 (S.D. Ala. Oct. 13, 2016) (same); *United States v. Dees*, 2014 WL 2885481, at *2 (S.D. Ala. June 25, 2014) (similar).

The Alabama statute under which Movant was convicted for manslaughter similarly encompasses conduct that is reckless or conduct that is intentional. Alabama Code § 13A-6-3, under which Movant convicted of manslaughter, states:

> A person commits the crime of manslaughter if:
> (1) He recklessly causes the death of another, or
> (2) He causes the death of another person under circumstances that would constitute murder under Section 13A-6-2; except, that he causes the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the

9

> passion to cool and for reason to reassert itself.

Ala. Code § 13A-6-3.

Accordingly, under the same analysis found by this Court to be persuasive as to Movant's second-degree assault convictions, Alabama's manslaughter conviction is also overbroad. *See also Jefferson v. United States*, 2016 WL 6023331 (S.D. Ala. October 13, 2016) (finding Alabama manslaughter statute overbroad).

This determination that Movant's predicate convictions are overbroad is important because it instructs this Court's analysis. Courts in this Circuit typically use the "categorical approach" to consider whether a prior offense is also an enhancement qualifying offense. *See United States v. Lockley*, 632 F.3d 1238, 1240 (11th Cir. 2011), *cert. denied*, 565 U.S. 885, 132 S.Ct. 257, 181 L.Ed.2d 150 (2011). The categorical approach restricts the court to relying on the fact of the prior conviction and the statutory language upon which the defendant's conviction rests. *Id*. However, where the predicate conviction statute is broader than the enhancement definition and the defendant's conviction is otherwise ambiguous, a court must apply the "modified categorical approach." *United States v. Pantle*, 637 F.3d 1172, 1175 (11th Cir. 2011), *cert. denied sub nom. Pantle v. United States*, 565 U.S. 1156, 132 S. Ct. 1091, 181 L. Ed. 2d 976 (2012) (abrogation on other grounds recognized in *United States v. Henderson*, __ Fed. App'x __, No.

15-14367, 2017 WL 56287, at *1 (11th Cir. Jan. 5, 2017) (unpublished)). Under the modified categorical approach, a court must gauge the factual circumstances underlying the predicate conviction. *United States v. Palomino Garcia*, 606 F.3d 1317, 1337 (11th Cir. 2010). In undertaking this inquiry, the court may consider charging documents, the plea agreement, a transcript of the plea colloquy, or other comparable documents that establish a judicial record of facts. *Shepard v. United States*, 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). A sentencing court may also base its factual findings on statements in the PSR that the defendant did not dispute. *United States v. Beckles*, 565 F.3d 832, 844 (11th Cir. 2009), *cert. denied*, ––– U.S. –––, 130 S.Ct. 272, 175 L.Ed.2d 183 (2009). Accordingly, as instructed by the above-cited cases, this Court now turns to each of Movant's challenged convictions.

Movant's manslaughter conviction was reported in the PSR at paragraph 31. That paragraph reveals that Movant was initially charged with murder, but pled guilty to the offense of manslaughter arising from the death of another person, Jeremy Smail, as a result of Smail's having been shot in the chest by a .22 caliber pistol. The PSR sets out the facts of this crime as follows:

> **Details:** On January 14, 1994, at approximately 8:20 p.m. officers with the Anniston, Alabama, Police Department were dispatched to a call regarding a shooting at the BP gas station on the corner of 18th

11

Street and Quintard Avenue in Anniston, Alabama. Preliminary investigation revealed that Jeremy Smail had been shot in the upper torso by a black male. Emergency medical personnel rendered first aid to the victim and transported him to the Northeast Alabama Regional Medical Center, where he was pronounced dead at 8:51 p.m. Smail died from a single shot to the chest from a small caliber handgun. Three small caliber shell casings were recovered from the scene.

Further investigation revealed that Jeremy Smail and his brother, Albert "Bubba" Smail were leaving the BP parking lot on Quintard Avenue in their Chevrolet Camaro vehicle when a verbal altercation occurred between Jeremy Smail, his brother, and three individuals (initially identified as black males). The altercation occurred when the Camero Jeremey Smail was driving backed up quickly and slid to a stop near the three individuals. There was a short verbal altercation between Smail and the three individuals. At that time, one of the individuals on foot drew a gun from his pants pocket and fired three to four shots into the Camaro. Jeremey Smail, who had been shot, then drove the Camaro forward at a quick speed, whereupon he lost control of the vehicle and crashed it into the parked pick-up truck. The three individuals then ran on foot east on 18th Street. Anniston, Alabama, Police attempted to interview Albert Smail who was in the Camero with his brother at the time he (his brother) was shot, but Albert Smail was very intoxicated and violent and would not cooperate. Descriptions of the three individuals who fled on foot were obtained by police.

Examination of Jeremey Smail's Camaro revealed one bullet hole above the passenger's side window. Another bullet hole was located in the passenger's side door and appeared to have come from a direction toward the rear of the car, as though the car had been moving when the shot was fired. One projectile was recovered from the interior of the door.

Smail's autopsy reports indicated that his cause of death was a single gunshot wound to the chest, from which a "jacketed" bullet was

recovered. The bullet passed through both lungs, the trachea, and other bodily organs resulting in massive internal hemorrhage and aspiration of blood. The bullet entered the right front chest area near the collar bone, traveling down through the torso of the body, without exiting.

On January 19, 1994, Anniston Police officers received a tip from Crime Stoppers that Mark Toyer was the person who shot Jeremy Smail, and that Nicolette Edmonson, and Sharon Fraicher were with him when this occurred. All three subjects were interviewed. All three subjects admitted that they were the three individuals with whom the Smails argued. Both Edmonson and Fraicher stated that Mark Toyer was the person who shot into the vehicle. Toyer admitted that he had a .22 caliber pistol the night of the offense. His mother subsequently retrieved the pistol (which was hidden under Toyer's bed) and turned it over to police. Toyer stated that this was the pistol he had used the night of the offense. Police reports indicate that there were no other guns or other weapons found at the scene on the night of the shooting.

(PSR at ¶ 31).

The Court cannot determine from the facts in the PSR whether Movant's conviction was or was not based on merely "reckless" behavior.[11] Accordingly, the Court has reviewed the transcript of the sentencing hearing.[12] There is absolutely nothing in that transcript that reveals any facts relating to the Movant's manslaughter conviction (other than the facts set out in the PSR). Not surprisingly, the transcript is also devoid of any conclusion by the Court regarding whether the

---

[11] As stated previously, the Government has chosen not to file any *Shepard* documents.

[12] Doc. 73 in 1:06-cr-361-VEH.

Movant's manslaughter conviction was determined by the Court to count as a predicate conviction supporting the ACCA enhancement under the elements clause only, the residual clause only, or under both clauses. Accordingly, the Court finds that, under *Johnson*, this enhancement was improperly applied.

Turning to the first of Movant's two Alabama challenged second-degree assault convictions, the Court notes that ¶ 35 of the PSR states:

> **Indictment:** On or about January 7, 1997, Mark Toyer, with the intent to cause physical injury to another person, caused physical injury to Enron Swink, Jr. by means of a deadly weapon or a dangerous instrument, to wit: a firearm.
>
> **Details:** On January 7, 1997, at approximately 4:15 p.m, Enron Swink, Jr. was talking to the defendant in front of 1604 Pine Avenue in Anniston, Alabama. Swink indicated to Anniston, Alabama, Police that after his conversation with the defendant, he (Swink) walked over and sat on a porch located at 1600 Pine Avenue. Swink indicated that a short time later the defendant came running out between the houses directing obscenities at him and fired three shots at Swink. Swink was struck on the upper left leg. Swink stated that the defendant then got on a red mountain bike and traveled west on 16th Street. Swink was treated at the scene by Anniston Fire and Rescue. The victim had an entrance and exit wound and declined transportation to the hospital.
>
> That same night, Anniston, Alabama, Police located a red mountain bike like the one described by witnesses at the scene lying in front of M-5 Cooper Homes in Anniston, Alabama. A young boy told officers that the person riding the bike went into apartment M-5. Officers knocked on the door and spoke with the resident, Pearson. Pearson stated that Mark Toyer came up and knocked on the door. Pearson said that Toyer then came in and told Charles Turner (who was at the residence) that he would give someone $10 to take him to Hobson

14

City, Alabama. Pearson agreed to take him. The defendant was subsequently located and arrested on September 3, 1997.

Based on these unobjected-to facts from the PSR, the Court finds that this second-degree assault conviction was, and is, a crime of violence under the "element's clause" of the definition of "crime of violence." *See* U.S.S.G. § 4B1.2(a)(1) ("The term 'crime of violence' means any offense ... that has as an element the use, attempted use, or threatened use of physical force against the person of another[.]").

The last challenged conviction is Movant's second Alabama second-degree assault conviction. It is reported at ¶ 42 of the PSR, which states:

> **Indictment:** On or about May 8, 1998, Mark Toyer, with the intent to cause physical injury to another person, caused physical injury to Harry S. Williams by means of a deadly weapon or dangerous instrument, to wit: unknown type of handgun.
>
> **Details:** Anniston, Alabama, Police records indicated that on May 8, 1998, between 10:00 p.m. and 10:30 p.m., the victim, Harry S. Williams, was attending a party in the area of 23rd Street and Walnut Avenue. Williams indicated that the defendant approached him and told Williams that he (Williams) owed him (the defendant) money. When Williams objected, the defendant pulled out an unknown type of handgun from his pocket. The defendant then began striking Williams on the left side of his face and neck with the handgun. Williams told police that he passed out, and when he regained consciousness, he went home. At the time of the police report, Williams was being treated at Northeast Alabama Regional Medical Center in Anniston, Alabama. The doctor treating Williams told officers he had bone fractures around his eye and cheek area. A

warrant was issued for the defendant's arrest on May 15, 1998 and he was arrested a few days later.

Based on these unobjected-to facts from the PSR, the Court finds that this second-degree assault conviction was, and is, a crime of violence under the "element's clause" of the definition of "crime of violence." *See* U.S.S.G. § 4B1.2(a)(1) ("The term 'crime of violence' means any offense ... that has as an element the use, attempted use, or threatened use of physical force against the person of another[.]").

## CONCLUSION

Because Movant has, after retroactive application of the holding in *Johnson*, three prior convictions that qualify as predicate convictions for purposes of the ACCA enhanced penalty, his motion is due to be, and hereby is, **DENIED**. This case will be **DISMISSED WITH PREJUDICE**. Additionally, the Court finds that Movant is not entitled to a certificate of appealability.

A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his petition. *See* 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). *Id*. "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. at § 2253(c)(2). To make such a showing, defendant

"must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.' " *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Movant has not made the requisite showing in these circumstances.

Finally, because Movant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE** and **ORDERED** this the 2nd day of June, 2017.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge